24-34-cv
*Williams v. Harry's Nurses Registry, Inc.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand twenty-five.

PRESENT:
> JOSEPH F. BIANCO,
> MICHAEL H. PARK,
> WILLIAM J. NARDINI,
> *Circuit Judges*.

_____

CLAUDIA WILLIAMS, fka CLAUDIA GAYLE,

    *Plaintiff-Appellee*,

    v.              24-34-cv

HARRY'S NURSES REGISTRY, INC.,
HARRY DORVILIER,

    *Defendants-Appellants*.

_____

FOR DEFENDANTS-APPELLANTS:   Marshall B. Bellovin, Ballon Stoll P.C., New York, New York.

FOR PLAINTIFF-APPELLEE:   JONATHAN A. BERNSTEIN, Isaacs Bernstein, P.C., Yardley, Pennsylvania.

Appeal from an order of the United States District Court for the Eastern District of New York granting entry of a preliminary injunction (Pamela K. Chen, *Judge*).

1

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order of the district court granting the request for a preliminary injunction, entered on December 20, 2023, is **AFFIRMED**, and the case is **REMANDED** for further proceedings.

Defendants-Appellants Harry's Nurses Registry, Inc. and Harry Dorvilier (together, "HNR") appeal from the district court's order granting Plaintiff-Appellee Claudia Williams's motion for a preliminary injunction and directing defendants to remove Williams's personal identifying information ("PII") from HNR's website and refrain from publishing the PII elsewhere. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

More than seventeen years ago, Williams, on behalf of herself and other nurses who were employed by HNR, brought a collective action in the Eastern District of New York against HNR for unpaid overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"), N.Y. Lab. Law § 650 *et seq*. *See Gayle v. Harry's Nurses Registry Inc.*, No. 07-cv-4672 (NGG) (PK), Complaint (ECF No. 1) (the "*Gayle* case").[1] In a series of orders, the district court granted summary judgment to plaintiffs on liability and damages, and also awarded attorneys' fees to plaintiffs; those orders were reflected in an amended judgment, dated October 16, 2013.[2] HNR appealed and we affirmed the amended judgment. *See generally Gayle v. Harry's Nurses Registry, Inc.*, 594 F. App'x 714, 719 (2d Cir. 2014).

---

[1] As explained below, at the time of that lawsuit, Williams was known by her maiden name, Claudia C. Gayle.

[2] The case was initially assigned to United States District Judge Charles P. Sifton and then was re-assigned to United States District Judge Nicholas G. Garaufis.

Beginning in 2021, however, HNR has repeatedly challenged the judgment. HNR first filed a motion in this Court to recall the mandate, which we denied. *Gayle v. Harry's Nurses Registry Inc.*, No. 12-4764, Order dated Feb. 1, 2021 (ECF No. 177). HNR then went to the district court and moved to reopen the case, which Judge Garaufis denied. *Gayle v. Harry's Nurses Registry Inc.*, No. 07-cv-4672 (NGG) (PK), Order dated May 13, 2021. HNR appealed that ruling; we dismissed the appeal as frivolous and referred HNR's then-counsel to the Second Circuit Grievance Panel for filing a frivolous appeal. *Gayle v. Harry's Nurses Registry Inc.*, No. 21-1463, Order dated Mar. 16, 2022 (ECF No. 151). HNR then moved the Judicial Panel on Multidistrict Litigation to transfer the *Gayle* case and two other cases against them to the Southern District of Mississippi, which the panel denied as moot. *In re: Harry's Nurses Registry, Inc.*, MDL No. 3020, Order dated Aug. 25, 2021 (ECF No. 4). HNR then filed another motion to recall the mandate in this Court, which we again denied. *Gayle v. Harry's Nurses Registry Inc.*, No. 12-4764, Order dated Nov. 2, 2023 (ECF No. 188).

In or around 2022, HNR also published posts on its website challenging the validity of the outcome in the *Gayle* case. For example, it published posts titled "Fraudulent judgment and scam involving CHARLES SIFTON and Jonathan Bernstein [plaintiffs' counsel] in Gayle case," and "Stealing the money, under ghost that is the power of the ghost by judgment Nicholas G. Garaufis and Judge Charles P. Sifton." Supp. App'x at 18, 21. Although the posts are rather difficult to comprehend, they assert, among other things, that "Jonathan Bernstein, a private attorney, colluded with Claudia Gayle, a purportedly fictitious individual, to initiate fraudulent summonses and complaints at the federal court," and that this Court's ultimate affirmance in favor of plaintiffs "seems to have been influenced by Bernstein's potent affiliations and political connections." *Id.* at 30. Around the same time, HNR published a post on its website accusing Williams of

3

perpetrating identity fraud, being "an interstate scammer," and "one of the most brilliant criminals that ever lived." *Id.* at 5. The post also displayed a copy of Williams's Social Security card, which contained her unredacted Social Security number, and copies of her driver's licenses, which showed her unredacted date of birth. *Id.* at 6.

In September 2023, Williams filed this instant action, alleging retaliation under the FLSA, 29 U.S.C. § 215(a)(3), and NYLL, N.Y. Lab. Law § 215. In November 2023, Williams moved for a preliminary injunction requiring HNR to remove her PII—namely, her Social Security number and date of birth—from its website. The district court granted the preliminary injunction. This interlocutory appeal followed.

"We review *de novo* the [d]istrict [c]ourt's legal conclusions in deciding to grant a motion for a preliminary injunction, but review its ultimate decision to issue the injunction for abuse of discretion." *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020) (internal quotation marks and citation omitted). "A district court 'abuses' or 'exceeds' the discretion accorded to it when (1) its decision rests on an error of law or a clearly erroneous factual finding, or (2) its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding—cannot be located within the range of permissible decisions." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 79 (2d Cir. 2024) (alteration adopted) (internal quotation marks and citation omitted).

"In general, a plaintiff seeking a preliminary injunction must establish that [(1)] [s]he is likely to succeed on the merits, [(2)] that [s]he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in h[er] favor, and [(4)] that an injunction is in the public interest." *Daileader v. Certain Underwriters at Lloyds London Syndicate 1861*, 96 F.4th 351, 356 (2d Cir. 2024) (alteration adopted) (internal quotation marks and citation omitted).

4

However, where, as here, a plaintiff seeks to require "the non-movant to take some action," the plaintiff is required to "show a *clear or substantial* likelihood of success on the merits and make a *strong showing* of irreparable harm." *Id.* (emphasis in original) (internal quotation marks and citation omitted).

## I. Standing

As a threshold matter, we address HNR's cursory contention that Williams lacks standing to seek a preliminary injunction. Although we typically deem arguments raised in a "perfunctory manner, unaccompanied by some effort at developed argumentation" to be waived, *Tolbert v. Queens Coll.*, 242 F.3d 58, 75 (2d Cir. 2001) (citation omitted), we have an independent duty to consider whether subject matter jurisdiction exists even when "no party has called the matter to the court's attention," *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 62 (2d Cir. 2009).

To establish standing, "a plaintiff must show (i) that [s]he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). "When a preliminary injunction is sought, a plaintiff's burden to demonstrate standing 'will normally be no less than that required on a motion for summary judgment.'" *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 404 (2d Cir. 2011) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 907 n.8 (1990)). Thus, a plaintiff "must set forth by affidavit or other evidence specific facts, which . . . will be taken to be true," to demonstrate standing. *Id.* (internal quotation marks and citation omitted). The only standing issue here is whether Williams has sufficiently shown that she suffered an injury in fact. We conclude that she has done so.

First, in assessing whether an alleged injury is "concrete," we ask "whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC*, 59 U.S. at 424 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Here, Williams's alleged core injury is the intentional and ongoing exposure of her PII to the public. As we have previously held, such an injury is concrete because of the "close relationship" between a "data exposure injury and the common law analog of public disclosure of private facts." *Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 287 (2d Cir. 2023); *see* Restatement (Second) Torts § 652D ("One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of . . . privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public."); *see also TransUnion LLC*, 594 U.S. at 425 (recognizing the "disclosure of private information" as an injury "with a close relationship to [a] harm[] traditionally recognized as providing a basis for lawsuits in American courts").

This concrete injury is also "actual." Because the alleged injury "falls squarely within the scope of an intangible harm the Supreme Court has recognized as 'concrete,'" we do not need to "take further steps to evaluate whether [any] third parties used the information in ways that harmed" Williams. *Bohnak*, 79 F.4th at 285–86 (emphasis omitted). In other words, because HNR's intentional and ongoing public disclosure of Williams's PII is itself an "actual injury redressable by the court," *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (internal quotation marks and citation omitted), it is unnecessary, for standing purposes, to evaluate the imminence of any future harm that HNR's action poses to Williams.

6

Finally, we find unconvincing HNR's suggestion that Williams's alleged injury is not particularized. "For an injury to be particularized, it must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (internal quotation marks and citation omitted). HNR argues that Williams has no personal stake in removing the PII because it does not belong to her. We find this argument unpersuasive. Insofar as HNR's contention that the PII did not belong to Williams is predicated on the fact that the posted Social Security card and driver's licenses are under the names "Claudia Cecile Gayle," "Claudia C. Gayle," and "Claudia C. Mathias," Williams proffered a number of documents that clearly support the finding by the district court that those are her own former names. In short, at this stage, HNR has failed to provide any basis to challenge Williams's evidence demonstrating that the published PII belongs to her.

Accordingly, we conclude that Williams has set forth a concrete, actual, and particularized injury that is sufficient to support standing.

## II.      Likelihood of Success on the Merits

The anti-retaliation provision of the FLSA makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under" the FLSA's provisions. 29 U.S.C. § 215(a)(3). The NYLL similarly bars an employer from "discharg[ing], threaten[ing], penaliz[ing], or in any other manner discriminat[ing] or retaliat[ing] against any employee" for making an NYLL complaint. N.Y. Lab. Law § 215. Under the *McDonnell Douglas* "three-step burden-shifting framework," a plaintiff alleging retaliation under the FLSA and NYLL "must first establish a *prima facie* case of retaliation by showing (1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment

7

action." *Mullins v. City of New York*, 626 F.3d 47, 53 (2d Cir. 2010) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *see Wilson v. New York & Presbyterian Hosp.*, No. 21-1971, 2022 WL 17587564, at *1 (2d Cir. Dec. 13, 2022). If the plaintiff establishes a *prima facie* case, "the burden shifts to the defendant to articulate a legitimate, non-[retaliatory] reason for the employment action." *Mullins*, 626 F.3d at 53 (internal quotation marks and citation omitted). If the defendant meets its burden, the plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, non-[retaliatory] reasons proffered by the defendant were false, and that more likely than not [retaliation] was the real reason for the employment action." *Id.* at 53–54 (internal quotation marks and citation omitted).

HNR does not contest that it was aware of Williams's protected activity but argues that the alleged retaliatory conduct was neither an employment action that disadvantaged her nor was causally related to her protected activity, and thus the district court erred in finding a likelihood of success on the retaliation claim. We disagree.

First, we find no basis to disturb the district court's determination that HNR's posting of allegedly false statements, along with Williams's identifying information in this particular case, constituted an employment action that disadvantaged Williams. "An employment action disadvantages an employee if it well might have dissuaded a reasonable worker from making or supporting similar charges." *Mullins*, 626 F.3d at 53 (alterations adopted) (internal quotation marks and citation omitted). HNR does not argue that, as a general matter, posting false statements about an employee along with her PII on the internet cannot constitute a retaliatory employment action. Instead, it contends that the alleged conduct cannot be retaliatory against Williams because "the identifying information posted on the internet did not belong to [Williams]." Appellant's Br. at 9. As discussed *supra*, however, Williams put forth evidence that the PII was her own. The

8

district court credited this evidence, noting that "there seems to be a perfectly reasonable and innocent explanation having to do with [Williams] having married or remarried or change[d] her own last name, thus explaining the changes in her identification documents." App'x at 208. At the same time, the district court discounted HNR's proffered investigative evidence that the PII was not Williams's, noting it was "not convinced that [the investigation] shows what [HNR] thinks it does" because it "is really a broad brush exercise that really doesn't prove much without [a] much more rigorous examination." *Id.* at 244. Nothing in the record suggests that this factual determination was clearly erroneous.[3]

We find similarly unavailing HNR's contention that the district court erred in rejecting HNR's argument that it never "*intended* to retaliate against [Williams] by posting information [it] believed in good faith did not belong to [Williams]." Appellant's Br. at 9 (emphasis in original). The district court concluded that whether the information actually belonged to Williams "is less relevant to the intent" inquiry, App'x at 220, because, essentially, "the sequence, timing and nature of events" surrounding the publication of the information reinforces that its predominant purpose was to get back at Williams, *see Mullins*, 626 F.3d at 54. More specifically, the district court found that "sufficient evidence based on defendant[s'] own words in the postings, [their] rantings about having lost at the district court and Court of Appeals level, and [their] railing against all of the participants in that process, even the judges . . . makes it so clear that . . . at least the primary purpose was to get back at everybody involved in this," including Williams. App'x at 231. Based

---

[3] We emphasize that in the preliminary injunction context, "there should generally be an evidentiary hearing when essential facts are in dispute." *State Farm Mut. Auto. Ins. Co.*, 120 F.4th at 83. However, "[a] party may, of course, waive its right to an evidentiary hearing." *Charette v. Town of Oyster Bay*, 159 F.3d 749, 755 (2d Cir. 1998). HNR did not seek an evidentiary hearing below, nor does it now appeal the district court's failure to hold such a hearing. Accordingly, any argument regarding the lack of an evidentiary hearing is waived.

on the evidentiary record before the district court, we discern no clear error in that factual determination.

On appeal, HNR does not even attempt to rebut Williams's *prima facie* case by proffering any legitimate, non-retaliatory reason for the publication of Williams's PII. Before the district court, the only reason it advanced was to dissuade other employees from "commit[ting] identity fraud to obtain employment." *Id.* at 228. However, the district court rejected this as a legitimate reason for the action, pointing out that "[t]here is no reason [HNR] has to use this forum in this way to police . . . who applies to [HNR] and whether they provide [HNR] with truthful information" because HNR can privately verify the employment information it receives. *Id.* at 232. In any event, the district court alternatively held that, even assuming *arguendo* that the rationale articulated by HNR was a legitimate, non-retaliatory reason for posting Williams's PII, it "couldn't be plainer" that retaliation was the "overriding, if not sole purpose." *Id*.

In sum, having reviewed the district court's analysis, we conclude that Williams demonstrated a substantial likelihood of success on the retaliation claim based on the record.

### III. Irreparable Harm

"A showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (internal quotation marks and citation omitted). "[T]he moving party must show that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *State Farm Mut. Auto. Ins. Co.*, 120 F.4th at 80 (internal quotation marks and citation omitted); *see Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (explaining that irreparable harm exists

10

"where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied").

Here, Williams made a strong showing of irreparable harm. As the district court observed, "the misuse of [Williams's PII] by the defendant[s] to post it long after the plaintiff is no longer working there, for no legitimate employment purpose, is . . . the injury," and such an injury "satisfies both standing, and also demonstrates irreparable harm." App'x at 245. The district court reasoned that, so long as Williams's PII remains publicly displayed on HNR's website, she suffers an ongoing harm that cannot be adequately remedied by a retrospective award of monetary damages, especially when it exposes Williams to "identity theft and misuse of personal information." *Id*. at 216. Under the particular circumstances presented here, the district court acted within its discretion in determining that such harm should be redressed at this juncture by a preliminary injunction, rather than at the conclusion of the case by final relief through monetary damages, because the continued display of Williams's PII subjects her "to a perpetual risk of identity theft or fraud." *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021). In other words, because, due to HNR's alleged conduct, Williams's PII is readily accessible by any malevolent actor with mere internet access, there is a "substantial chance" that she may not be able to return to the position she previously occupied—namely, one where her information has not been misappropriated for identity theft or fraud. *Brenntag Int'l Chems.*, 175 F.3d at 249. The district court reasonably determined that the continuing harm in this case will cease only if HNR is ordered to remove Williams's PII from its website and enjoined from disclosing the information elsewhere.

HNR argues that, because Williams's PII had already been publicly disclosed in one of HNR's prior court filings, and Williams did not seek a preliminary injunction until two months

11

after filing her complaint, those delays undercut her showing of irreparable harm. We are unpersuaded. To be sure, "[d]elay in seeking enforcement of [a plaintiff's] rights . . . tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). Thus, we have declined to find irreparable harm in cases where the delay created a "fair inference" that "[plaintiffs] were well aware of their rights and had concluded that they were not violated." *Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*, 60 F.3d 27, 39 (2d Cir. 1995). Here, the record reflects that Williams's counsel was not aware of HNR's public disclosure of Williams's PII in HNR's prior court filing in the *Gayle* case. Even if Williams's counsel was, or should have been, aware of this disclosure, nothing in the record suggests that Williams herself was aware of it; and, in any event, the injury alleged in this case pertains to HNR's internet postings, not its previous filing. The record also reflects good reason for the two-month period between the filing of the complaint and the motion for a preliminary injunction. In October 2023, a little over a month after the complaint was filed, Williams's counsel contacted HNR's counsel in an effort to have HNR remove the PII from its website without court involvement. After receiving no response to Williams's October 30, 2023 correspondence on the matter, Williams promptly moved for preliminary relief in November 2023. In short, there is an insufficient basis to infer that Williams sat on her rights in a way that indicates "a reduced need for . . . drastic, speedy action." *Citibank, N.A.*, 756 F.2d at 276.

## IV.    Balance of Hardships and Public Interest

We also find no abuse of discretion in the district court's determination that this "is just not . . . a close case about the harms and the balance of hardships." App'x at 232. As noted above, Williams had established both a likelihood of success on the merits and irreparable harm. By contrast, the district court found that HNR has no "real or genuine or . . . non-delusional reason"

12

to post Williams's PII on its website. *Id.* at 246. We reach the same conclusion with respect to assessing the public interest, which requires courts to consider "the public consequences in employing the extraordinary remedy of injunction," *Yang*, 960 F.3d at 135–36, and "ensure that [the] injunction does not cause harm to the public interest," *SEC v. Citigroup Glob. Mkts. Inc.*, 673 F.3d 158, 163 n.1 (2d Cir. 2012). In particular, the district court determined that "it's not against the public interest[] to take down these accusations [from the website]," App'x at 247, especially where the district court found "there has been some reckless disregard for [Williams's] privacy rights, as well as the truth of the matter," *id*.

On appeal, HNR's sole argument as to these requirements is to suggest in cursory fashion that, because it purportedly has "a significant collection of evidence indicating that the identifying information at issue is not [Williams's]," and "[Williams] has failed to disprove such evidence, the balance of hardships and public interest weigh in favor of denying [Williams's] motion for a preliminary injunction." Appellant's Br. at 14. However, given that we have already determined that the district court did not commit clear error in crediting Williams's evidence establishing that the identifying information at issue belonged to her, HNR has failed to provide any basis to disturb the district court's determination that Williams had also satisfied the balance of hardships and public interest prongs of the preliminary injunction standard.

*          *          *

13

We have considered HNR's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the district court's order granting Williams's motion for a preliminary injunction and **REMAND** for further proceedings on the merits.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court